1  Mark Brnovich
   Attorney General
2
   Michael K. Goodwin, Bar No. 014446
3  Assistant Attorney General
   1275 W. Washington
4  Phoenix, Arizona 85007-2997
   Telephone:  (602) 542-7674
5  Facsimile:   (602) 542-7644
   Michael.Goodwin@azag.gov
6
   Attorneys for the State Defendants
7

8           **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE DISTRICT OF ARIZONA**

10

11 Patrick Cogan,                          Case No. CV14-01418-PHX-DJH

12            Plaintiff,                    **DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT**
   vs.
13
   Maricopa County, and/or Maricopa
14 County Juvenile Probation Department;
   Chief Probation Officer Eric Meaux; and
15 Charlotte Shrum and John Doe Shrum,

16            Defendants.

17

18         This is an action under the Family and Medical Leave Act (FMLA).  It is one of

19 two lawsuits that the Plaintiff, Patrick Cogan, filed after he abruptly quit his job with the

20 Maricopa County Juvenile Probation Department.  The other suit has already been

21 adjudicated against him, and Defendants have moved for Judgment on the Pleadings

22 based primarily on res judicata.  (Doc. 19.)  That motion is pending.  Defendants

23 continue to assert that the prior adjudication bars Plaintiff from relitigating the

24 circumstances of his departure from the Juvenile Probation Department.

25         But even absent the prior adjudication, Plaintiff's claim under the FMLA fails.

26 As explained below, Defendants encouraged Plaintiff to take leave under the FMLA and

27 fully complied with that statute by restoring him to his position as a Juvenile Probation

28 Officer after he returned from leave.  Defendants therefore move, under Fed.R.Civ.P. 56,

for summary judgment.  This motion is supported by the accompanying Statement of Facts (cited herein as "DSOF ____").

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Patrick Cogan was employed as a Juvenile Probation Officer at the Maricopa County Juvenile Probation Department.  (DSOF 1.)  The job responsibilities of Juvenile Probation Officers include preparing electronic and written reports, documenting and maintain confidential case records, maintaining communication with clients, attending and testifying in court, visiting with juveniles and their families, and directing probationers to community resources.  (DSOF 2.)  According to the Department's written procedures, "Supervisors assign cases to Juvenile Probation Officers (JPOs) geographically.  The geographical boundaries for assignments may contain multiple zip codes, are fluid, and may change as required to meet client and agency needs."  (DSOF 3.)  Plaintiff was in the Department's Investigative Unit.  (DSOF 4.)  He was also "virtual probation officer" in that the Department provided him with a laptop computer and other equipment that enabled him to do most of his work at home.  (DSOF 5.)

At 3:40 a.m. on May 21, 2012, Plaintiff sent an email to Investigative Unit Supervisor Charlotte Shrum and Interim Division Director Richard Kokes.  (DSOF 7.)  It said:

> I have decided to terminate my employment with Maricopa County Juvenile Probation.  I have left all of my equipment in your office.  I was unable to locate my rascard.  If you would please text me the information as to when and where I can pick up my last check as well as my retirement money it would be greatly appreciated.  The number is 480-***-****. I don't have voicemail and will not be talking to anyone.

(DSOF 7.)  Because the resignation had been sent in the middle of the night, with no warning or explanation and an expressed desire not to talk to anyone, Kokes became concerned.  (DSOF 8.)  He went to Plaintiff's home to check on him, but Plaintiff's wife did not know where he was.  (*Id*.)  Later that day, May 21, Plaintiff phoned Kokes and

said he was dealing with personal problems.  (DSOF 8.)  Kokes encouraged Plaintiff  to seek help.  (DSOF 9.)  Kokes also advised Plaintiff that he would not accept Plaintiff's resignation, and he encouraged Plaintiff to take FMLA leave.  (*Id*.)  Plaintiff thanked Kokes.  (DSOF 10.)

Plaintiff was approved for leave for a serious health condition under the FMLA from May 21, 2012, to June 24, 2012.  (DSOF 11.)  On June 25, 2012, he returned to work as a Juvenile Probation Officer.  (DSOF 14, 20.)  On June 27, 2012, he was assigned to a caseload of "maybe four" cases, far fewer than the forty or so that the Juvenile Probation Officers in his unit usually handled.  (DSOF 16.)  This caseload was drawn from a geographic area covering the western part of Maricopa County and not the Central Phoenix area to which he was assigned before he went on FMLA leave.  (DSOF 17.)  Plaintiff was still in the Investigative Unit and was still a "virtual probation officer."  (DSOF 21, 22.)  The only thing that changed after Plaintiff returned from FMLA leave was the address of the probationers he was assigned to supervise.  (DSOF 23.)  The actual tasks that he was expected to perform, such as writing reports, remained the same as the tasks he performed before FMLA leave.  (DSOF 25.)

But Plaintiff never worked the caseload to which he was assigned after he returned from leave.  (DSOF 18, 19.)  He went to Kokes' office and handed Kokes a letter stating, "As on 6-28-12, I am resigning my position as a juvenile probation officer for Maricopa County."  (DSOF 25.)  He told Kokes that he did not like working for the Juvenile Probation Department and did not like being in Arizona.  (DSOF 26.)  Kokes told Plaintiff that if he submitted his resignation effective immediately, Kokes would have to accept it.  (DSOF 27.)  Plaintiff said that he had thought about it and had made up his mind.  (*Id*.)  The Department accepted his resignation.  (DSOF 28.)

Soon thereafter, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging discrimination in violation of the Americans with Disabilities Act (ADA).  (DSOF 29.)  On April 30, 2014, the EEOC issued a Dismissal and Notice of Right to Sue within 90 days.  (DSOF 30.)  On June 26, 2014, Plaintiff filed

1    this action alleging a violation of the FMLA.  (Doc. 1.)  He did not assert a claim under

2    the ADA in this action, although he concedes that he could have done so.  (DSOF 32.)

3    Instead, he brought a separate suit under the ADA which, as discussed in the Rule 12(c)

4    Motion, has been fully adjudicated.  *Cogan v. Maricopa County, etal.*, CV14-01704-

5    PHX-JJT, Docs. 30, 31.

6    **II.    LEGAL DISCUSSION**

7        **A.    Legal Standard**

8        "The court shall grant summary judgment if the movant shows that there is no

9    genuine issue of material fact and the movant is entitled to judgment as a matter of law."

10    Rule 56(a), Fed.R.Civ.P.

11        **B.    After Returning from FMLA Leave, Plaintiff Was Reinstated to the**

12                **Same or an Equivalent Position.**

13        Plaintiff's primary contention is that Defendants interfered with his FMLA rights

14    by failing to reinstate him after he took FMLA leave.  (First Amended Complaint, ¶¶ 13,

15    21.)  Plaintiff also invokes 29 U.S.C. § 2617.  (*Id.*, ¶¶ 22-24, 26-27.)  But that provision

16    goes to the remedy, specifically, the availability of money damages.  This Court has

17    already recognized that Plaintiff's claim for monetary relief against the State is barred by

18    the Eleventh Amendment , and Defendants have already argued that the bar should

19    extend to all of the Court Defendants since they are arms of the State.  (Doc. 7; Doc. 19.)

20    Even if Defendants did not have immunity, there would be no basis for monetary relief

21    because Plaintiff cannot establish a substantive violation of the FMLA.

22

23        "The FMLA creates two interrelated, substantive employee rights: first, the

24    employee has a right to use a certain amount of leave for protected reasons, and second,

25    the employee has a right to return to his or her job or an equivalent job after using

26    protected leave."  *Bachelder v. America West Airlines, Inc*., 259 F.3d 1112, 1122 (9th

27    Cir. 2001).  Any eligible employee who takes FMLA leave is "entitled, on return from

28    such  leave … to be restored by the employer to the position of employment held by the

employee when the leave commenced; or … to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).  An equivalent position is one involves "the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."  29 CFR § 825.215(a).  In *Foraker v. Apollo Group, Inc.*, 2007 WL 1546099 (D. Ariz. 2007), the court held that the plaintiff was reinstated to an equivalent position where he was given a job with the same pay grade and working title, even job the job classification and duties were somewhat different.  *Id.* at *4.

Before he went on FMLA leave, Plaintiff was a Juvenile Probation Officer in the Investigate Unit.  (DSOF 1, 4.)  When he returned from leave, he was reinstated as a Juvenile Probation Officer in the Investigative Unit.  (DSOF 20, 21.)  The only thing that changed is that after Plaintiff returned, he was assigned to caseload drawn from a different geographic area.  (DSOF 23.)  But the geographical boundaries for assignments were fluid and subject to change.  (DSOF 3.)  Plaintiff's actual job duties did not change.  (DSOF 24.)  Moreover, because Plaintiff could do the bulk of his work from his home as a "virtual probation officer," a change in the addresses of the probationers did not change his job.  (DSOF 22.)  In sum, Plaintiff had the same job classification, worked in the same unit, and was expected to perform the same duties after he returned from FMLA leave.  As a matter of law, he was restored to the same position or, at the very least, an equivalent position.

### C. Plaintiff Was Not Constructively Discharged.

The FMLA also makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  An allegation of a violation of this section is known as a "discrimination" or "retaliation" claim.  *See Bachelder*, 259 F.3d at 1124. Plaintiff was not discharged, of course, but he does allege that assigning him to a a

1   caseload from another geographic area forced him to resign.  (First Amended Complaint,

2   ¶ 17.)  As Judge Tuchi recognized in Plaintiff's other lawsuit, this contention fails as a

3   matter of law.

4          A constructive discharge occurs "when the working conditions deteriorate, as a

5   result of discrimination, to the point that they become sufficiently extraordinary and

6   egregious to overcome the normal motivation of a competent, diligent, and reasonable

7   employee to remain on the job to earn a livelihood and to serve his or her employer."

8   *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (citing *Brooks v. City of San*

9   *Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)).  Working conditions must "become so

10  intolerable that a reasonable person in the employee's position would have felt

11  compelled to resign."  *Id.*  The Ninth Circuit "set the bar high for a claim of constructive

12  discharge because federal antidiscrimination policies are better served when the

13  employee and employer attack discrimination within their existing employment

14  relationship, rather than when the employee walks away and then later litigates whether

15  his employment situation was intolerable."  *Id.*  "An employee who quits without giving

16  his employer a reasonable chance to work out a problem has not been constructively

17  discharged."  *Id.* at 1185 (quoting *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494

18  (8th Cir. 1996)).  A constructive discharge involves "something more" than normal

19  harassment and is not established "unless conditions are beyond 'ordinary'

20  discrimination."  *Pa. State Police v. Suders*, 542 U.S. 129, 142 (2004).

21         In *Poland*, the plaintiff was a customs agent who for nine years supervised the

22  Customs Service's Portland office.  After he filed a discrimination complaint and had

23  other issues with his chain of command, he was reassigned to a nonsupervisory position

24  in Virginia.  He worked five months in his new assignment then took early retirement

25  and filed suit, claiming constructive discharge.  The Ninth Circuit ruled, as a matter of

26  law, that he was not constructively discharged.  *Id.* at 1185.  The court explained that

27  because a constructive discharge requires proof of job conditions worse than a

28  reasonable person could tolerate, "an employee may not … be unreasonably sensitive to

1  a change in job responsibilities." *Id.* (quoting *Serrano-Cruz v. DFI P.R., Inc.*, 109 F.3d

2  23, 26 (1st Cir. 1997)); *see also King v. AC&R Advertising*, 65 F.3d 764, 767-69 (9th

3  Cir. 1995) (holding that employee whose managerial responsibilities were reduced and

4  salary cut from $235,000 to $175,000 was not constructively discharged); *Steiner v.*

5  *Showboat Operating Co.*, 25 F.3d 1459, 1466 (9th Cir. 1994) (rejecting constructive

6  discharge claim of plaintiff who claimed her supervisor had ridiculed her and given her

7  poor evaluation to force her to quit).

8       Here, Plaintiff cannot seriously contend that his working conditions were

9  intolerable.  The only noteworthy change in his work assignment was that he was given a

10  substantially *fewer* cases than the probation officers in his unit usually handled.  (DSOF

11  16.)  On top of that, he quit before he even worked his new caseload.  (DSOF 18, 19.)  In

12  addition, Plaintiff's assigned to a caseload from another geographic area pales in

13  comparison to the cross-country transfer of the plaintiff in *Poland*.  The evidence in this

14  case falls far short of a constructive discharge.

15  **III.     CONCLUSION**

16       There is no triable issue.  For the reasons stated above (and the reasons stated in

17  the Rule 12(c) motion), Defendants are entitled to summary judgment.

18       Respectfully submitted this       day of November, 2016.

19                                    Mark Brnovich
                                      Attorney General
20

21                                    s/Michael K. Goodwin
                                      Michael K. Goodwin
22                                    Assistant Attorney General
                                      Attorneys for Defendants
23

24

25

26  I certify that I electronically
    transmitted the attached document
    to the Clerk's Office using the
27  CM/ECF System for filing and
    transmittal of a Notice of Electronic
28  Filing to the following CM/ECF
    registrant, this       day of November,

2016, to:

Patrick Cogan
17222 N. Paradise Park Drive
Phoenix, Arizona 85032
Plaintiff Pro Se

  s/Deb Czajkowski

#5414906